# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| MICAELA DE CORRAL | PETITIONER |
| v. | No. 4:25-cv-145-BJB |
| JASON WOOSLEY, ET AL. | RESPONDENTS |

\* \* \* \* \*

## OPINION & ORDER

Micaela De Corral, a citizen of Mexico, entered the United States, without permission over three decades ago. Petition (DN 1) ¶ 11. And she has lived here since, under a prior Department of Homeland Security policy allowing—but not requiring—the detention of people who entered illegally and reside inside the country. She concedes, however, that she lacks lawful status in the United States.

Recently, the Acting Director of Immigration and Customs Enforcement changed the agency's policy: ICE now considers the Petitioner, and others like her, subject to mandatory detention under 8 U.S.C. § 1225(b)(2) rather than permissive detention under § 1226(a). *See* USA Response (DN 11) at 11–13.[1] Under the new policy, immigration officers arrested the Petitioner. *See* Petition ¶ 9. And she has spent the law few months in Grayson County Jail while her removal proceedings play out.

The Petitioner, like many other immigration detainees who have sought relief the past few months, advances statutory and constitutional arguments: that the Government is today detaining her in violation of constitutional due-process protections as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and that the Government lacks statutory authority to detain her without offering her bond hearings because she is not an "arriving alien" within the meaning of 8 U.S.C. § 1225(b)(2). And, most recently, she moved for injunctive relief, echoing

---

[1] *See also* Maria Sacchetti & Carol D. Leonnig, *ICE Declares Millions of Undocumented Immigrations Ineligible for Bond Hearings*, WASH. POST (July 15, 2025); *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AM. IMMIGR. LAWYERS' ASS'N, Doc. No. 25071607 (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (supplying an apparently genuine copy of the policy memo in question, which doesn't appear to be available on ICE's website or in the Federal Register).

those same arguments. *See* Emergency Motion (DN 18). The Petitioner, in intervening status reports however, had advanced another theory supporting her release: She contends that because another judge has already decided it's unlawful to detain someone in her shoes without bond, her continued detention is unlawful and violates that court order. *See* Reports (DNs 15 & 16) at 1–3. The decision in question is *Bautista v. Santacruz*, --- F. Supp. 3d ---, No. 5:25-cv-1873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). It certified a nationwide class consisting of:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c)[2], § 1225(b)(1)[3], or § 1231[4] at the time the Department of Homeland Security makes an initial custody determination.

*Bautista*, 2025 WL 3713987, at *32. The District Judge entered this declaratory judgment against numerous federal defendants—all agencies or the heads of agencies involved in immigration enforcement, including two of the Respondents in this case: Kristi Noem (the Secretary of Homeland Security) and Pamela Bondi (the Attorney General).[5]

Those Defendants opposed class certification and the declaratory judgment in the California litigation, and have opposed habeas relief in this Kentucky litigation on similar grounds. Yet the *Bautista* court has by now entered a final judgment "that the DHS policy is unlawful"—because, among other things, the judge interpreted it to "violat[e] Petitioners' … statutory and constitutional rights." *Id.* at *31, *28. Contrary to the Acting Director's policy memo, the court declared that "§ 1226(a) is the appropriate governing authority over Petitioners' detention," *id.* at *10, meaning that members of the nationwide class (which would include the Petitioner in this case) could not be detained without a bond hearing. Given that interpretation of the

---

[2] All parties agree that § 1226(c) requires detention of several categories of aliens who have committed specified criminal offenses.

[3] Section 1225(b)(1) provides that, in general, aliens who were neither admitted nor paroled and have been in the country for less than two years are subject to expedited removal.

[4] Sections 1231 commands the Attorney General to detain an alien after a removal order, § 1231(a)(2)(A), and either "remove the alien from the United States within a period of 90 days," §1231(a)(1)(A), or evaluate the alien for release under a supervision order, §§ 1231(a)(3), (a)(6).

[5] Named defendants in the California class-action litigation include the Department of Homeland Security, the Executive Office for Immigration Review, Immigration and Customs Enforcement, the Acting Director of Immigration and Customs Enforcement, the Secretary of Homeland Security, and the Attorney General.

immigration statutes, moreover, the court vacated the new DHS policy. *Id.* at *31–32.

De Corral now ask this court to, in effect, enforce the California class judgment against the federal Respondents by preventing them from relying on their contrary interpretation of §§ 1225 and 1226 to justify pre-removal detention without bond. The Government's principal and arguably sole reason for detaining De Corral, she emphasizes, is its since-rejected interpretation of § 1225 to mandate detention. And now the Government is bound by a valid judgment, benefiting all class members, that precludes it from relying on that reason.

In response, the federal Respondents maintain that the *Bautista* decision "has no preclusive effect" here. USA Supplemental Response (DN 17) at 9. Its opposition brief offers a host of arguments, which march under two main banners.

The first is an attack on the legality of a single court's declaratory judgment that would bind the entirety of the nation's immigration apparatus, freeze the development of the law, and perhaps effectively deliver habeas relief to a nationwide class of immigrants despite Supreme Court caselaw limiting such suits to the jurisdiction of confinement. "[J]urisdiction over core habeas claims … 'lies in only one district: the district of confinement.'" *Id.* at 2–3 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). That rule, the Government insists, renders "class-wide declaratory relief … inappropriate in the habeas context," *id.* at 3 (citing *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998), and the *Bautista* judgment "a legal nullity outside" the Central District of California, *id.* at 4. And as should be clear from the discussion below, the Court shares many of the Government's first-order concerns about the prudence, and perhaps even the lawfulness, of the *Bautista* decision.

The second, and most pertinent, concerns the preclusive effect of the *Bautista* judgment outside the Central District of California.

At least as the Government has advanced this position so far, this doesn't offer a reason for this Court—as opposed to an appellate court—to relieve the Government of the binding nature of a final judgment. Questions about the legality of the judgment are properly directed to the Ninth Circuit Court of Appeals on appeal from the district court's ruling—not to trial judges in other jurisdictions. Our role is to consider the *effect* of a final judgment running between the plaintiffs and defendants now before us. And longstanding federal law concerning the preclusive effect of judgments—rightly or wrongly—sharply limits one judge's authority to question the force or accuracy of another judge's judgment. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981). Whether the judgment is correct makes no difference. "A judgment merely voidable because based upon an erroneous view of the law is not open to collateral

3

attack, but can be corrected only by a direct review." *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927); *accord Moitie*, 452 U.S. at 398–99; *see also Reed v. Allen*, 286 U.S. 191, 200 (1932) ("In every other forum the reasons for passing the decree are wholly immaterial … It cannot be attacked collaterally, and in every other court must be given full force and effect, irrespective of the reasons upon which it is based.") (quotation marks omitted).

  It matters little, if at all, that this is a declaratory judgment, final but still on appeal, entered against executive-branch officers. These principles of preclusion apply to declaratory and coercive judgments alike: "Any such declaration shall have the force and effect of a final judgment." 28 U.S.C. § 2201. This is black-letter preclusion law. "If a declaratory judgment is valid and final, it is conclusive, with respect to the matters declared, as to all persons who are bound by the judgment." RESTATEMENT (SECOND) OF JUDGMENTS § 33. That finality means that "[m]atters actually litigated by the parties and determined by a declaratory judgment are thus precluded from further litigation." 18A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 4446 (3d ed., supp. Sept. 2025). And it makes no difference that the judgment in question here is currently on appeal; it carries full preclusive effect all the same. 18A WRIGHT & MILLER § 4433 & n.13 (citing *Deposit Bank of Frankfort v. Board of Councilmen of City of Frankfort*, 191 U.S. 499, 510–12 (1903)). Between the parties to the *Bautista* decision, and as to issues the parties had a "full and fair opportunity to litigate," that judgment is conclusive. *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (quotation marks omitted). And as a matter of federal preclusion law, the judgment binds not only the named Defendants, but all federal immigration-related agencies and officers (acting in their official capacities) serving under the direction of the Attorney General, Secretary of Homeland Security, and acting ICE Director. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940).

  The Government's counterarguments are unavailing.

  First, the opposition brief casts doubt on the *Bautista* court's jurisdiction to issue a declaratory judgment, on a question clearly related to habeas relief, on behalf of a nationwide class. This jurisdictional attack may well be correct. The *Bautista* court itself acknowledged that affording "*habeas relief* on a nationwide level" might offend *Padilla*'s district-of-confinement rule. *Bautista*, 2025 WL 3713987, at *14. And that several statutory provisions limit trial judges' equitable authority to interfere with immigration and removal proceedings under the guise of habeas. *See, e.g., id.* at *27 (discussing 8 U.S.C. §§ 1252(e)(1)(A) and 1252(f)(1)); *id.* at *23 (discussing §§ 1252(e)(1)(B) and 1252(e)(3)(A)). Undoubtedly wary of these limitations, the *Bautista* court didn't grant habeas relief (at least not *per se* habeas relief) or even enter any sort of injunction against the federal immigration officials, *see* § 1252(f)(1). Yet its declaratory judgment came as close as one could reasonably imagine to effectively ordering such relief, at least to the extent the Government

relies on the statutory authority rejected in *Bautista*. The spirit and perhaps the letter of the declaratory judgment is inconsistent with the statutory limits Congress carefully enacted on courts' remedial authorities. *Cf. Khalil v. President of the United States*, --- F.4th ---, 2026 WL 111933, at *9 (3d Cir. 2026) (describing the "channeling scheme" that Congress created to reduce "piecemeal litigation" in this area). A nationwide, non-habeas habeas class surely distorts Congress' expectation that "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)); *see also id.* at 443 ("[A]n 'application for a writ of habeas corpus must be made to *the* appropriate district court.'") (quoting FED. R. APP. P. 22(a)).

True, jurisdictional questions about the rendering court's jurisdiction represent one of the rare exceptions that may allow collateral attack against a final judgment in a second forum. As Chief Justice Marshall observed long ago, "the operation of every judgment must depend on the power of the court to render that judgment." *Rose v. Himely*, 4 Cranch 241, 269 (1808); *see also* 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION § 1313 (1833) (U.S. Constitution's Full Faith and Credit Clause "does not prevent an inquiry into the jurisdiction of the court, in which the original judgment was given, to pronounce it.").

But the Government's jurisdictional attack overlooks an important aspect of the federal law of preclusion: "The principles of res judicata apply to questions of jurisdiction as well as to other issues." *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939). A jurisdictionally defective judgment *is* susceptible to collateral attack if no one noticed the jurisdictional defect in the first forum. But, at least according to aged but binding rulings of the Supreme Court, if a jurisdictional question was itself "fully and fairly litigated by the parties and finally determined in" the rendering forum, then that question isn't subject to collateral attack in a second forum. *Durfee v. Duke*, 375 U.S. 106, 116 (1963).[6]

---

[6] Nor does *Padilla* itself, by speaking in terms of "jurisdiction," decide the question whether *Bautista* overstepped. To be sure, the *Padilla* decision states that "jurisdiction" to decide "core habeas petitions challenging present physical confinement … lies in only one district." 542 U.S. at 443. And the Supreme Court has held that all lawsuits that "necessarily imply the invalidity of [the claimant's] confinement" are core petitions. *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quotation marks omitted). In context, however, *Padilla* is best read to state a rule of venue, not subject-matter jurisdiction. Chief Justice Rehnquist's opinion for the Court acknowledges as much: "[t]he word 'jurisdiction' … is capable of different interpretations," and *Padilla* claims to "use it in the sense that it is used in the habeas statute …, and *not in the sense of subject-matter jurisdiction of the District Court.*" *Padilla*, 542 U.S. at 434 n.7 (emphasis added).

Therefore if the Government's jurisdictional argument is to succeed—when properly raised in appeal of the *Bautista* ruling—that would presumably result not by direct

The Government undoubtedly attacked the *Bautista* court's jurisdiction on the grounds outlined above and advanced here. And whether or not that court reached the right conclusions about jurisdiction, the Central District litigated—and decided—these questions. *See Bautista*, 2025 WL 3713987, at *14, *30 (concluding that *Padilla* does not foreclose jurisdiction to grant the declaratory relief entered). Nor does the Government offer any reason to think it had less than a full opportunity to litigate the matter. If anything, the Government had *more* opportunity and "incentive to defend vigorously," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979), in a lawsuit that threatened to culminate in a nationwide class judgment paired with universal vacatur. So this jurisdictional attack is one that is routed to the appellate courts rather than to other trial courts faced with a binding final judgment against the same defendants.

Second, the Government suggests that the nationwide class declaration should be treated as a "legal nullity." USA Supplemental Response at 4. Although the Government never quite says as much, it strongly implies that the class certification—at least as extended and exploited here—contradicts the Supreme Court's recent rejection of nationwide injunctions. *See Trump v. CASA, Inc.*, 606 U.S. 831 (2025). But part of the reason the Supreme Court rejected universal injunctions was because they "are a class-action workaround." *Id.* at 850. So *CASA* itself is no barrier to reliance on the Rule 23(b)(2) class certification at issue here. Indeed, the text of the Rule (again, wisely or not) appears to envision such classwide declaratory relief and articulates no jurisdictional limit on the scope of such a certification or declaration. *See* FED. R. CIV. P. 23(b)(2). If class declarations of the sort issued from California here don't reach Kentucky, that would result from independent limitations on federal courts' jurisdiction or remedial power, *cf. Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999); *CASA*, 606 U.S. at 841–42, that have yet to be applied to class actions in binding precedent.

Indeed, the *Bautista* ruling, and its potential knock-on effect in cases like these, proves prescient Justice Alito's observation in *CASA*: "today's decision will have very little value if district courts award relief to broadly defined classes without 'following Rule 23's procedural protections' for class certification." But Justice Alito was concurring, *CASA*, 606 U.S. at 867, not holding. He may well prove right that a nationwide Rule 23 declaratory judgment circumvents not only the spirit of *CASA*—resurrecting "the universal injunction … under the guise of 'nationwide class relief,'" *id.* at 868—but also the settled principle that "class-wide injunctive relief" is forbidden in this context, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 555 (2022).

---

application of *Padilla* but instead from the significant conflict between a nationwide immigration declaration, on the one hand, and the district-specific limits imposed by the immigration statutes and *Padilla*, on the other.

6

Swapping the injunction for a declaration, and relying on other courts to enforce it, *see* 28 U.S.C. § 2202, also raises concerns about piecemeal litigation and the allocation of remedial power among 94 coequal district courts. *Cf. Calderon*, 523 U.S. at 749 (finding nonjusticiable a "declaratory judgment action" that "would simply carve out one issue in the dispute for separate adjudication"); *Coffman v. Breeze Corp.*, 323 U.S. 316, 323–24 (1945) (similar).

All this, however, lies beyond the Court's remit. As made clear by the binding precedent discussed above, the Court has little leeway to second-guess a final judgment after full and fair litigation.

So the question before the Court—and the Government, should it seek to continue detaining the Petitioner—is neither the lawfulness nor the wisdom of the *Bautista* judgment. It is instead whether *Bautista* is indeed a judgment imbued with preclusive power—and what if any reasons beyond those the Central District considered and rejected justify the Petitioner's detention as against habeas petitions asserted in the district of confinement.

On this score, the Government advances a handful of equitable arguments urging that the Court exercise "discretion" to disregard *Bautista*. *See* USA Supplemental Response at 7.

**1.** That the Government has appealed *Bautista*, *see id.* at 9–10, doesn't matter—at least not before the Ninth Circuit says otherwise. A final judgment retains its preclusive force unless and until it is vacated (or perhaps stayed). *See* 11 WRIGHT & MILLER § 2863. "[T]he general rule," according to authority cited by the Government, is "that a judgment is entitled to preclusive effect even though an appeal is pending." 18A WRIGHT & MILLER § 4404.

**2.** Normally, the Government notes, a declaratory judgment may be enforced only by a motion for an injunction under 28 U.S.C. § 2202. And that motion, the Government presumes, must be made in the Central District. *See* USA Supplemental Response at 6. But these habeas petitions are not, strictly speaking, motions to *enforce* the *Bautista* judgment; that is, they don't seek a coercive order requiring the Government to afford bond hearings or set aside a DHS guidance document. That, of course, may be the practical effect of a nationwide declaration—and, as discussed above, those "extraterritorial" and "coercive" effects may well undermine the basis for the California court's class certification and declaration. Regardless of the cleverness of the *Bautista* lawyering or the sensitivity of the Government's predicament, the opposition brief here points to no authority that would nullify the effect of a declaration absent a request for a § 2202 injunction. The availability of that remedy in the Central District has no obvious bearing on the applicability of the binding declaration here.

7

**3.** Nor is this a question of *nonmutual* estoppel, a doctrine that sometimes affords trial courts discretion. USA Supplemental Response at 7–8. As the federal Respondents observe, the federal government isn't subject to nonmutual preclusion. *See id.* (citing *United States v. Mendoza*, 464 U.S. 154, 159 (1984)). The question is one of *mutual* estoppel: the Petitioner here is a member of the class that benefits from a judgment binding the Respondents here. This likewise renders irrelevant the existence of prior inconsistent judgments, which in some circumstances stands as a bar to nonmutual estoppel. *See id.* at 8 (citing *Parklane Hosiery*, 439 U.S. at 330). The preclusion issue here is not whether prior judgments bar the Government from any chance to litigate the questions presented; instead, the issue is whether the Government may *re*-litigate here questions it fully litigated and lost elsewhere.

**4.** Similarly, whether "issue preclusion is ever appropriate in the habeas context," USA Supplemental Response at 8, is beside the point. Because this Court is merely applying a binding civil judgment, not revisiting any issue in the context of postconviction review, this argument, too, doesn't limit the effect of the declaration.

Otherwise—unless and until the *Bautista* judgment is vacated or stayed by a court with appellate jurisdiction—the Government remains a party to a final judgment that precludes it from relitigating the issues decided, and this Court must honor that judgment so long as it has not been vacated. That means, among other things, that the Government cannot carry its burden "to show cause why the writ should not be granted," 28 U.S.C. § 2243, by pointing to the mandatory-detention argument that *Bautista* rejected.

*\* \* \**

The Government has yet to identify any other lawful reason for detention beyond the mandatory-detention argument from § 1225(b)(2). If it has one, of course, then it may offer it—and continue to detain the Petitioner if it can show lawful authority to do so. *See Boumediene v. Bush*, 553 U.S. 723, 740–41 (2008) ("[B]y issuing the writ of habeas corpus common-law courts … inquire into the authority of a jailer to hold a prisoner."); 3 STORY, COMMENTARIES § 1333 ("[I]f no sufficient ground of detention appears, the party is entitled to his immediate discharge."). The Petitioner and the Government agree that this case, which depends, in part, on the effect of the *Bautista* judgment, may be decided on the briefs. But neither the Petitioner nor the rule of law would benefit from the Court's deciding the important questions of jurisdiction and preclusion that *Bautista* raises "on a short fuse without benefit of full briefing." *Does 1–3 v. Mills*, 142 S. Ct. 17, 18 (2021) (Barrett, J., concurring). These considerations weigh in favor of giving the Government, and the Petitioner, a chance to respond to the Court's preliminary views on the matter, outlined in this order. Given the *Bautista* judgment about the scope of § 1225(b)(2), and the return the Government has made in this case, *see* USA Supplemental

Response, release seems warranted. So if the Government has any other reason to confine the Petitioner, or additional reasons to doubt the preclusive effect of *Bautista*, it must offer it promptly.

## ORDER

The Government must file any supplemental response, to this order and the Petitioner's motion for injunctive relief (DN 18), no later than February 6, 2026. The Petitioner may file a response to the Government's brief no later than February 13, 2026.

If the Government does not offer other lawful reasons to detain the Petitioner, or a reason that *Bautista* does not preclude it from advancing the reasons it has relied on so far, the Court will order the Petitioner's release for lack of a lawful reason to detain.